Good morning. The only case on our docket today is 18-50635 United States v. Crittenden. Ms. Berenger? I'm sorry. Please pronounce your name. May it please the court, Elizabeth Berenger for the United States. The court incorrectly applied the Rule 33 standard for granting a new trial based on the weight of the evidence. This was not an exceptional case in which the evidence of knowledge preponderated heavily against the verdict, such that a miscarriage of justice occurred. This is not a case where there was some sort of trial problem, or evidentiary instruction problem, or the court did not identify any witness credibility issues. This was all based on the weight of the evidence. And the evidence supporting the verdict was quite strong. The drugs came to, according to the testimony, into Dominguez's garage in a bin. And Crittenden saw the bin. And the bin made him want to get the bin. He knew enough to want to get the bin out of the house and away from his children. Dominguez testified that she assumed, and they assumed, that the bin contained drugs, because her longtime drug dealer and drug source had given it to her. The record reflects that both Dominguez and Crittenden had some sort of familiarity with drugs. And this is at two places in the record. First, it comes to us in Exhibit 22A, where Dominguez is talking to the informant and tells the informant she's been working with her husband, and her husband is involved in distribution of marijuana in Austin. And it also comes from Dominguez's testimony, where she said in 2015, her and her husband made a decision to get away from the drug lifestyle. The only reasonable inference from the evidence is that Crittenden moved the drugs from the bins into the suitcases that were in the garage. He then takes 100 pounds of drugs in those bags and moves them across town to the home of an 80-year-old man, takes those 100 pounds of drugs, and puts it in the attic. When the time came for Dominguez to deliver the drugs to the informant, Crittenden goes over to get the drugs. And this is such an important fact for the jury, that he picks up 10 bundles of methamphetamine. The evidence was that there were 90 bundles of marijuana. They're all about a pound, and they look like bricks. And there are 13 bundles of methamphetamine. They're all about a pound, and they look like Subway sandwiches. So they look different. And when he goes, he gets 10 bundles, not all the meth, just 10. And the reason that's important is because in Exhibit 22A, they just learned five hours earlier that the informant wanted 10 pounds of methamphetamine. There wasn't any discussion of quantity earlier, and the informant says, I can't handle any more than 10. 10's all I can handle. So five hours later, Crittenden goes, gets exactly 10, not 13. And when police come into the attic, they find the three remaining bundles of methamphetamine mixed among the marijuana packages in the backpack. So then Crittenden tells the agents later he thought the bundles contained marijuana. He also told them there were more bags in the attic, and he knew he was going to get in trouble for telling them. So based on the evidence in front of the jury, the record does not support the court's finding here that the evidence preponderated heavily against the verdict. And I waive the remainder of my uninterrupted time if the court has questions. I'm wondering if you could just clarify the order that's before our court, because as I it, there were three adverse decisions from the district court. One within 14 days of the verdict. That's just the plain grant. Then you notice your appeal. Then in October of 2018, reasons for the grant come out. Then two years later, the court issues a clarification. Does the government suggest that any of those three adverse orders, the district court was divested of jurisdiction to issue, or couldn't by virtue of the timing rules in Rule 29 and 33? What's the order that we're reviewing? The order that is being reviewed, I think, fairly encompasses the November 2018 order because the government did make the argument that the court was no longer had discretion to do it. But there is an abundant case law in the circuit that allows a court to sort of help the appeal and correct the record. So it was the two years later after remand from our court. That's fairly comprehended in your notice of appeal? Oh, whether our notice of appeal covers that? Well, it was, it was a court's clarification of its earlier order is my understanding. So I don't think that the later order really adds anything to the discussion. It simply confirms. Well, the later order puts all the language of preponderance against guilt. It's the only place you see analysis that could arguably fit into Rule 33. The order in October clarifying the actual order is a pure insufficiency finding that would normally constitutionally trigger double jeopardy, right? It's the government's position. It did not trigger double jeopardy. And I think the court's comments at the remand did clarify that. But also this court's decision in Robertson looks to what the court, even though it might use imprecise language. If I can just, and I don't want to take up too much time, but if you rely on Robertson, Robertson in turn relies on a footnote in the Supreme Court Tibbs decision, correct? To what extent? To the extent that a defendant can seek relief alternatively under Rule 33, suggesting insufficient trial proof, but somehow not getting the constitutional protection of dual, double jeopardy. The authority for that, that Rule 33 is available for insufficiency arguments is what? It's Robertson in our court, but what does it go back to? I'm not sure I understand the question. What is the authority for a trial court to say there's some problem with the trial proof and yet not then give relief, which is no trial, double jeopardy attaches? Well, there is some space between Rule 28 and Rule 33 and where the evidence is constitutionally sufficient under Jackson versus Virginia, but the court feels in the interest of justice that it would be appropriate to get a new trial. The government does not dispute that. And there are cases, Tibbs versus Florida is a great example. Well, I think it's the only, and unless you know of another. I can give another great example. The Eighth Circuit has a great decision in Staxx, and I think that that is also a decision in Staxx. It's an Eighth Circuit decision where the evidence was sufficient to support the verdict. The court made a credibility assessment in that case. It looked at the entire record. It gave specific reasons why it disbelieved the government's witness. It gave specific credibility findings. I have one final question. If interest of justice is as capacious enough to include evidentiary attacks, is there any reason that it's not also capacious enough to allow a trial judge to say, I don't like the severity of the punishment that this defendant's looking at, and therefore I'm going to grant a Rule 33 new trial for that reason? Can you think of a, if it's capacious enough interest of justice to include evidentiary weakness, why wouldn't it also extend to severity of punishment? The problem, Matt, is that a trial would not provide any remedy, a new trial would not provide any remedy for that problem. If it's only the court's concern about the sentence, a new trial does nothing because it just allows the And also, it implicates separation of powers concerns, giving the third branch a lot more power over the criminal justice system than it should. I'm going to address the standard of review because I do think that that is a concern in this case. Of course, it's abuse of discretion, but what does that mean in the granting of the new trial? That came up, of course, before the panel, and the Court of Appeals must review whether the court's findings about the weight of the evidence met the applicable standard, and there must be some substance to the review. So when we look at the cases of this circuit, they demonstrate this abuse of discretion standard in Wall and O'Keefe. They look to the specific standard that the court is applying, and then, you know, evaluating whether there's some sort of factual support for the record. And other circuits have also talked about that this can't be sort of a piecemeal assessment, and there's a series of Eighth Circuit decisions that demonstrate this point well in Johnson and Campos, as well as Lansman and Archer from the Second Circuit, where the court can't lock into one piece of evidence and not consider all of the evidence on the element that the jury considered. So that would also be an abuse of the court's factors and discount important factors in its analysis. Counsel, you cited that the standard was miscarriage of justice. Isn't the standard under the rule interest of justice? That's the language of Rule 33, but the heavily preponderate standard says that it's an exceptional case in which the evidence on the knowledge element or in the element preponderated heavily against the verdict, such that a miscarriage of justice occurred. That's historically been the standard, and all of the circuits apply it based on the weight of the evidence. But the Rule 33 standard is the interest of justice. It's a pretty broad standard. And that's why the heavily preponderate standard is so important, is that it gives sufficient discretion to the district court, but it also circumscribes that discretion in some ways. It must be tied to the evidence before the court. It must heavily preponderate against the verdict. This court in a decision called Walls rejected that it could just be on the subjective view of the district court, his feeling or her feeling that an injustice occurred. It must be tied to the standard and the standard being the heavily. I'm sorry. I didn't mean to interrupt you if you were still answering. It's sometimes hard with the Zoom. Go ahead. Oh, I can't. I had a follow-up if that's okay. What evidence is there that Crittenden actually moved the drugs from a container to the suitcase? I know there's some testimony from the wife, but then she says, no, I just guess I'm just assuming. So what evidence is there in the page 595 of the record? The evidence is that in 595 and both 603, that they were in there, they met together. She told him what was happening. They both looked at the bin together. And then somebody, she said it was not her, and they were the only two people involved in this situation, moved. She said she was not there. Somebody moved, probably him, moved it from the bins into the suitcases. But she says that she doesn't know whether he, she comes back and says, I can't say whether he did or not. And the district court, you said earlier in your opening something about credibility, that this district court wasn't saying anything about credibility. It's very clear from the sentencing of Mrs. Dominguez that the district court just didn't believe her. She tried to act like she wasn't very responsible for this and the district court seemed to believe this was all her doing. And so it's very, so based upon her testimony that she didn't do it and she doesn't know who did it, it doesn't mean that he did it, especially at the district court sitting as the 13th juror, as we've described it, doesn't believe her. There's a couple points in there. The first is to the extent that the court drew an inference that Crittenden did not know that he was dealing with a controlled substance from Dominguez's testimony, that would be an implausible factual finding. It's not supported by her testimony, for sure. She did say a couple times, we didn't know it was in there. We never opened the bags, but she walked that back in cross-examination. She said they assumed it was drugs. And also we have the recordings that provide context to that. So on the same day she's saying, you know, we didn't know, she's also communicating in Exhibit 21A with the informant and saying, he calls and says, hey, do you have any like Ventanas? Do you know what I'm saying? And she doesn't say like, who are you? Do you have a wrong number? I don't know what you're talking about, Ventana. She's like, yes, I know what you're talking about. And that's on the 14th when she picked up the drugs. So the recordings, the jury's able to examine her prior and consistent statements to officers. They're able to examine the recordings. They're able to examine later where she admits she does assume, I mean, these bins were given to her by the only relationship she has with the person who gave her the bins is he's her drug source. That's it. She doesn't have a relationship with him. I don't think there's any question that she knew. And I don't think there's any question that the district court thought she knew. I mean, he sentenced her, I think to 15 years. So she knew, but she tried to make it that he did some of the things and the district court did not believe that he was as involved as she was or that he was involved. So the evidence shows that Dominguez was actually trying to help Grittenden in her testimony. She waived a Bruton instruction. She allowed the court and she said, I don't want to waive it. Anything that puts the blame on me. She took responsibility for everything. Unfortunately, her testimony was incriminating to him on the knowledge element. Perhaps it was helpful to him on the conspiracy element, but not helpful to him on the knowledge element. And if one expected that the trial evidence was really showing that Grittenden had no knowledge, one would expect the defense attorney would have raised that in closing argument. It was not an issue at trial. This was not a contested element at trial. Him saying, I thought the bags contained marijuana is a pretty incriminating statement that he knew he was dealing with a controlled substance. And I did want to follow up Judge Elrod about the 13th year question. And I think this is important because the court is sitting on bunk and it's really an imprecise analogy that's not helpful in Rule 33. It isn't. And the closest I can find of where this originates, and it comes to us from a 1970s case is the first time the Fist Arckets started using it, is from Wright and Miller. This is not rooted in history. It's not helpful because it seems to suggest that a district court can nullify a case. I mean, that's not the purpose of Rule 33, that it's a nullification of the jury system. It cannot be. I mean, I thought that was the most helpful explanation. The judge is doing exactly that. The judge is a 13th juror. It's as if the jury has deadlocked. The judge is in there saying, I don't agree. I won't ever agree. Therefore, new trial. Well, for one, that's not exactly what the match up on guilt. They are a check in the system. They're weighing whether the evidence preponderates heavily against the verdict. Okay. But that is what this case is all about. If Rule 33 is available at all for a proof challenge, which I have difficulty accepting, the standard has to be something less than the standard that would get a defendant a judgment of acquittal, hence double jeopardy, right? You can't just have an equivalent standard, but you walk around the Constitution. So what we're here to do, the text just says interests of justice. But you're telling us the district court has to find one or two elements. First is somehow the district court's got to, we're going to come up with the language of preponderates against guilt. And two, plus causes miscarriage or preponderates against guilt so that there's a miscarriage. That's correct. And that's all just invented language. There's another important fact is that it must be an exceptional case. This is not just the run of the mill. This is a drug case. I don't feel like subjectively, this cannot be a subjective test based on the personal way. Right. But do you agree all of these elements are just invented? They have to fit into this phrase interests of justice. I think that the standard gives sufficient discretion to the district court in a situation where a true injustice is happening, yet also circumscribes that discretion in a way that's meaningful. You see how I'm pushing back. You use phrases like true injustice, but Congress and the rules have used a phrase interests of justice. This is true that the standard has developed historically as the amicus brief has pointed out. But if we think of the abusive discretion standard as guardrails, a lot of these will be really close cases. And you know what, Judge Higginson, most of these cases are not strictly like in this case, just based on the weight of the evidence or the reverse. It's usually weight of the evidence plus some other trial problem, plus some other prejudice that happens to the defendant. If you think of Tarango, it was evidence plus. Robertson, it's evidence plus. There's some sort of other problem that we give great discretion to the district court. But in a situation like this, where the district court is just reviewing the exact same evidence as the jury and just coming to a different conclusion about inferences in circumstantial evidence of knowledge, that's just disagreement. That's not allowed under Rule 33. What's the difference between interest of justice and miscarriage of justice? Is there one? I can't answer that question. I don't know. I know that this is the language. I'm trying to think of how there was a distinction in the Walls case about the miscarriage of justice, and it's in a footnote. It delves into that it doesn't just mean that the defendant is innocent. There can be other prejudice caused to the defendant, similar to plaintiff error, that go beyond innocence. That's the best explanation I have seen. But I think it really, and some circuits have said it has to affect the innocence. You believe an innocent person is convicted. That's the Seventh Circuit's line of cases. But this court has never gone so far. The government's not arguing that the defendant has to be innocent. The government is not arguing it has to be a sufficiency. If the evidence is sufficient, you can never grant a new trial. That is not our position. Our position is there's guardrails here. The heavily preponderance test is a very broad standard. In this case, where there's strong evidence of knowledge, there wasn't any evidence that he didn't know. There was no affirmative evidence of innocence. And we know that the judge was colored by his views about the sentence. And in this case, the court exceeded its discretion. And if the court did not exceed its discretion here, there really are no objective bounds on what a district court can grant a Rule 33. Well, if the trial, if the verdict is a miscarriage of justice, doesn't it follow that it's in the interest of justice to vacate it and grant a new trial? I mean, in terms of the relationship between those two terms, it's going to be in the interest of justice. I wouldn't disagree with that. But I'm not sure that I'm really in the weeds on that particular question. But interest of justice may be broader than miscarriage of justice. One is a subset of the other. The hard thing about like ferreting out the standard, in some ways, like words are words at some point. And we sort of just have to evaluate the record before us. And the record before us with a governing standard, a lot of cases are going to be too tough to call. I mean, we have some, Tucker Herrera was a very close case. And Robinson was a very close case. But those cases comfortably fell within the district court's discretion. Not here. This is just a judge saying, I don't think the jury got it right. I think we need to do over. And we know, based on the court statements, it really was colored by its views about the sentence. Could that be hypothetically, could the judge say, the law has changed, the sentence would be not in the interest of justice. And so therefore, I'm going to do the one thing I can do to make sure that the sentence comports with the interest of justice. And it's a timing question. Is that a use of the interest of justice? That's not the rule. That's straight up. You know, just not for some other reason, but straight up for that reason. No, the court cannot use it because it disagrees with the mandated sentence of Congress. It can't. It's outside. It's changed because the law has changed in the interim. And so the court will give a different sentence automatically or has the potential to give a different sentence. It's mandated anymore. Well, right. I mean, the court has to give the sentence that Congress requires that the law changed as it did for Crittenden. He was only subject to the 10 year. I don't want to say only because 10 years is still a very long sentence, but he was subject to the 10 year sentence and not the 20 year sentence. But a court cannot. But the law changed after the court granted a new trial, right? Right. But the appeal is when the law changed. This is true. And he couldn't have been with why the district judge granted a new trial because he thought the this is true. It doesn't bear out on these facts. I was just responding to the hypothetical. Did he know? Was there guidance that this would be? When was the timing of the guidance that the law was going to be? The first time the record shows that anyone was aware was the government filed a supplemental notice in January of 2019 about the impact of the First Step Act on the case. Let me ask you a question. Rule 33 is predicated on the court acting based on, quote, upon the defendant's motion. So axiomatically, it's not a sua sponte notion by the judge. So my question is, surely interest of justice can't be just a catch all for whatever doesn't fit. So the question is, given it's predicated on a defendant's motion, what was the articulation of the, quote, interest of justice included in the defendant's motion that the judge here embraced? And should that be part of what we're reviewing? You follow me? I mean, this isn't a sua sponte deal. It says upon the defendant's motion. So presumably the defendant moves and has to articulate what this interest of justice as being a bridge. So here, what is it since we've talked about miscarriage of sort? You follow my question? Yes. Well, I think, please correct me if I don't, but the defendant did not raise the knowledge element as the reasons for his Rule 33 motion. He based it on possession and perhaps intent to distribute evidence, which is the reason cited by the district court during the trial. Never raised the knowledge element in it. And the court, the government never had an opportunity to address it because it was never raised before the court ruled. So the defendant never really articulates interest of justice such that we could match up what was raised in the motion and what the judge did to say, yes, that works. I think that's a fair characterization, Judge Stewart. I, if the court does not have any further questions, I will reserve the remainder of my time for rebuttal. May it please the court. Mary Stillinger for Mr. Crittenden. You know, I think we all agree that the right to trial is one of the most, if not the most important rights a defendant has, and it's also one of the most important. I tell juries this all the time. It's one of the things that makes this country great. It is one of the most important parts of our democracy. And there's some feeling that granting a motion for a new trial is a denigration of the right to trial or that it somehow cheapens a trial because a judge has set aside a verdict and granted a new trial. But I think in reality, and I have to say in this case, I was gratefully educated in part by the amicus brief that went back. I honestly probably would not have done that research back to Blackstone, but to learn the history of the granting of new trials and how it really, the Federal Judiciary Act of 1789, put that into place past two weeks after the Bill of Rights, put that into place as a safeguard for protecting the integrity of trials. It is actually a safeguard to prevent the occasional rare case when the jury doesn't reach the right decision, when there is some problem the judge may be called upon in the interest of justice to set aside a verdict and order a new trial. And that is part of ensuring a right to a fair trial. So what is there about this trial that tells us that it lacked integrity? That's your word. Sure. Well, let me, I can talk about the evidence a little bit. Clearly, and actually to get back to a question Judge Stewart asked just a moment ago about what was raised in the motion for a new trial, because the government said he didn't raise the evidence, a lack of knowledge, but the defense counsel did. It was a Rule 29 or in the alternative, a Rule 33 motion, and he raised sufficiency of the evidence on all counts and specified, and I will agree that he focused, he, I was not trial counsel, so I'm talking about he, the trial counsel, focused on the two conspiracy counts. But I mean, it wasn't the best written motion, but the defendant carried a bag that had drugs in it. And if you're going to say there's not sufficient evidence of conspiracy, you are implicitly, clearly saying he didn't have knowledge of the drugs. Because if you're carrying a bag that you know has drugs in it, then you don't have an argument that you weren't part of a conspiracy. You're helping someone carry drugs. So, and I'm sorry, let me get back to what the, I don't know, I was talking about the integrity in general of a jury trial, but specifically as to this, I think the judge was concerned about the quality of the evidence. He was concerned about a lack of evidence, and it came into that. Actually, so the lack of evidence cuts the other way. That is, we're talking about which way the evidence preponderates, there's really no evidence in this record to indicate lack of guilt. What do you rely on, on your side of weighing the evidence in terms of which side preponderates? Well, I, okay, so no evidence of lack of guilt. I mean, so what we're talking about is knowledge. I mean, there's certainly evidence that Mr. Crittenden carried a bag that had drugs in it. And so I think we can all agree we're talking about his knowledge. It is hard to come up with affirmative evidence of lack of knowledge, but what Judge Brion is focused on was that there was not evidence of his knowledge. The evidence cited by the government right now. Let's take a hypothetical. If I'm walking down the street here in New Orleans carrying a bag, and a police officer walks up to me and says, what's in the bag? And I say, I think it may contain cocaine, or it might contain cocaine. When you say I'm in real trouble, or would you say that that statement can be used to indicate that I really don't know what's in the bag, and therefore I could not be convicted? Well, I would say you're definitely in trouble, number one. Number two, could you be convicted? I think it would depend on other circumstances, honestly. So if you're walking along with a bag and the officer says, did you know that had cocaine? I mean, if there's no other circumstance, you picked it up because you were Eats driver and you're picking up lunch to go, and you say, well, I believe it might. I don't think that by itself in a vacuum is going to be enough. No, I don't. And I think that Judge Brion was troubled by the evidence in this case came from the co-defendant, who was Mr. Crittenden's wife. That is, everything when the government was first citing the evidence that they saw, he saw the bins, he assumed they had drugs, he was, the wife said he worked with me. Those all came from the wife, the co-defendant testifying, who, as Judge Elrod pointed out, the judge clearly did not think was a credible witness. She was all over the place, if you read her testimony. What about his selection of 10, I guess bricks, if you will, of substance that was not marijuana? Well, I'll tell you this, and I listened to my last argument and this question was asked, if we knew there was evidence that he did that, I don't think we would be here. I don't think Judge Brionis would have granted a new trial if there was evidence that he did that. The problem is that I know the government said he did that. That is an inference upon an inference because truly agents saw Mr. Crittenden go to that house, and the house, I'm talking about the house where there were drugs in the attic. Agents watched him go there. He was not carrying anything when he went there, and then the hours later, they didn't maintain surveillance on the house. Sometime later in the day, they see him come out of the house with a bag. Mr. Crittenden said he took some bags over there. There's no evidence he opened up any of the bags. There's no evidence that he moved bags from one place to another. The wife, who is the person and I really do think this is what bothered Judge Brionis more than anything else, is the damning evidence, the convicting evidence came from the co-defendant, who was not a credible person, who was all over the place. I didn't think it was disputed that Crittenden brought the suitcase that had the meth for the CI. No, that is correct. He admitted that he brought the bags over. Judge Richman's question is how do you explain that there's mostly marijuana in the attic. How does he happen to bring the right drugs that the CI wanted if he doesn't know what's in these bags? Well, so I could think of a couple of scenarios. One would be, the wife says, bring me that little black bag, and the little black bag has what she needs. There's one scenario. Another scenario is that somebody else went into that house. Maybe, I don't know who that would be, but the house was not kept under surveillance. But I thought you said it was, you accept that he retrieved the bag that was given. Yes, I do accept the fact that he retrieved the bag. What I'm distinguishing is that I do not accept the fact that he selected the packages and put them in the bag. Ms. Dillinger, these are just fact arguments that were made to the jury, Rule 29. We can look at the record. You heard my first question to opposing counsel. Procedurally, if the district judge in November of 2018 found the government failed to prove beyond a reasonable doubt that Mr. Crittenden knowingly possessed the controlled substance in question, what authority does the district court have two years later to say, nope, double jeopardy doesn't attach? I've decided instead of not evidence sufficient to prove the case, it only preponderates against it. Well, it was very confusing to me as well, Your Honor, when I saw that order, because it sounds like a Rule 29 order, is what it sounds like. Until two years later. Well, except that the judge, in his initial order that was just a couple of sentences, he actually, I think it says, I'm granting the motion for judgment of acquittal or in the alternative motion for new trial. So you get that order and you don't know which one. No analysis, government appeals. Right, except we do know because Judge Briono said, we're setting this for trial again. So that was, I guess, the, why we knew where the judge was going with this. But you're right, when he did the written order, it said there is not evidence. And it read a little bit like a Rule 29 order. But, well, and the important thing is constitutionally, what does it trigger? No, I understand what you're saying. If it's Rule 29, it triggers double jeopardy. Exactly. I understand that. This court, I mean, for these reasons, this court remanded and asked the judge to clarify. There is another case, and I don't think I can put my hands on it right this moment, where this court was concerned because the judge had used some of the Rule 29 language in granting the new trial. And they were concerned. So looking at the interplay of Rule 29 and 33, is it your position, undisputed by the government, that the defendant basically post-verdict gets two shots? He can say, no proof, I get protection against retrial, or doubtful proof, and therefore I get a new trial. Is that the current state of the law, the exact same argument, insufficient trial proof, either gets you a bar, or if we come up with some little lesser proof standard, you get a new trial? Is that how these two rules work together? I believe that it is. I believe that. And it traces, am I correct that it traces back to a footnote in Tibbs? Well, I mean, I think it actually traces back to Blackstone, to common law in England is what I think it actually traces back to. But this particular, just that, and it probably is a very thin area between Rule 29 and Rule 33. But yes, I think it comes out in Tibbs. So the challenge for us en banc is to define that thin window, where a trial court says, I've heard it, and I'm really the 13th juror. I could see a rational juror might convict, but I have doubts, new trial, as opposed to no rational juror could convict, double jeopardy protection. I believe that that is, the court is called upon to yes, to define how this court's going to look at it. We've got to craft that rule. Some circuits say heavily preponderance, others just say preponderance, some add the word miscarriage. Well, and some circuits say it has to be a verdict that was completely against, they say defies physical, it's patently incredible or defies physical reality, or that there's some sort of evidentiary instructional error added to the evidentiary problem. Those are some other circuits. Those are the 2nd and 11th circuit, I think, that really add these other things to it. What I think is that Rule 33 says what Rule 33 says, which is a judge can order a new trial if he believes there is a miscarriage of justice. Well, it doesn't say miscarriage. I'm sorry. You're right, I just said it wrong. But that's important because then I come back to a more fundamental question, why can't, if we're going to read interest of justice that comprehensively, why can't a judge look at 3 strikes and you're out for this guy? His wife was in it, he wasn't, we don't know, I saw credibility, I don't think so, he shouldn't go to jail for life, and explicitly include severe punishments in his interest of justice neutral. I have to say, this might be unusual, but I actually agree what counsel for the government said on this is one, is a new trial doesn't fix it. A new trial just gets you a new trial. You could plead guilty and avoid to some lesser sentence. But anyway, so you agree with the government, that's a fine point. I do on that point, because it doesn't fix it is one, and two, I don't think a judge can just say, I'm throwing this case out because I don't like the law. I mean, I do think there's a separation of powers. Congress said this is the does, and he can say, in the interest of justice, there can be other things, obviously with rule 33, there are other reasons a judge could decide in the interest of justice, there should be a new trial. It wouldn't have to be just, I mean, like in Tarango, it was, it was a prejudicial, well, it wasn't a, it wasn't a severance. I mean, the severance, because the codefendant fled, and then all this evidence came in against the remaining defendant with the empty seat. And I think it was Judge Ferguson in that case said, you know, this, this really wasn't fair to the one person sitting there. So that was not so much the weight of the evidence, it was just, this just wasn't really fair. Counsel, you just said that a new trial wouldn't fix a sentencing concern. Yes. I'm having trouble seeing, like, unless there's an acquittal, how a new trial fixes the evidentiary concern here. I mean, on your reading of the case, which is that the evidence here heavily preponderated against guilt, how does, how does this case ever end in a valid conviction under your view of the case? If you go back, we affirm here, new trial, you go back to El Paso, government presents the same evidence, guilty again. I mean, wouldn't we be in a cycle? Wouldn't the judge, if, if it was a miscarriage of justice this time, wouldn't it be a miscarriage of justice the second time? So I'm glad you asked that, because there's a couple of things. One, one is that I think it would be different this time, and this is why. I think what the judge saw is he saw the co-defendant testified and sank her husband. She was not a credible witness, but, but it is not unusual that a jury would hold it against him, and this is his wife, and she did all these bad things, and now she's saying bad things about her husband, and that might have sat bad with the judge. Second time around, she's, she's off in prison. She's not going to be there. I mean, the government could, they could subpoena her.  No, and they might subpoena her. Okay, well, it's a weaker case without her, though. There's even less, I mean, there's, on your view, there'd be less evidence without her implicating him. Well, no, I believe we have a stronger case without her there, yes, but, but you're saying what would, right, what would, counsel, isn't, yes ma'am, I'm sorry, isn't one thing that could happen at the trial is if there is evidence that he moved these tin bricks that could be brought, we learned that all this parsing of the bricks and the suitcases actually hadn't been done in the first trial, and that, so they could, the government could make a stronger case about moving specifics and try to pin him down on that, couldn't they, because that was not done in the first trial. People assume that that was done, but that was not actually done, and we had the photo of the suitcase that got in, but these other things were not admitted and broken down in that way, were they? Well, you're, you're right, Judge Elrod, but, but the problem, the position I'm in is the problem is saying how could the government convict him the second time around. I don't think they could, because I don't think the evidence is actually there. I don't think. Then it should be a sufficiency, rule 29, case over, you're. Well, but, but here's the thing, I mean, I think the next time around, it might be a rule 29. It may be. I think one of the problems with this trial that I saw is that defense counsel, in opening and in closing, made arguments that did not help his client, and, and, and the government, in fact, cites that in the brief. Well, you know, defense counsel didn't really challenge knowledge. They, they made arguments almost against the defendant. I think that bothered the judge a lot, and I don't think that would happen the second time around. Um, so that, that's one of those things. I mean, when you see a case where there's not real evidence of knowledge, and you see a defense counsel that's, that's arguing not to the best . . . A defense counsel would be a classic procedural basis for a new trial. I'm sorry, Judge, I, I missed the first part of your question. A judge could, there's all kinds of procedure, jury instructions are bad, evidence came in improperly, defense lawyer was trial, but that's, that's not what the judge said. You're right. The judge did not say that. The judge did not say that, and, and he did not find ineffective assistance of counsel. Obviously, that was not raised. The motion was filed by that counsel. Um, so obviously, that, that basis was not raised. Um, if I had been counsel at the time, I probably would have raised that, Your Honor, but it, it was kind of impossible under the circumstances. Um . . . Counsel, you're talking about what evidence might be at the new trial, and that, and that was a question that Judge, a really good question that Judge Costa raised, but you need to talk about whether there is evidence that he, from which the jury could infer that he knew in this trial, and, uh, we need to get into the nitty gritty of what he moved versus what is the, just the wife's testimony, and about these bricks and things, and so can you please, because there may not be a new trial, I mean, assuming argumento, and so this is your chance. You're, and so if you don't think there's knowledge in this record, you need to tell us why. Sure. Well, thank you, Judge, and, um, I would say the, the worst thing, and I think the thing that bothers some of the judges is Mr. Crittenden says, I believe there might be drugs, and we don't know exactly what he said, because it's a statement, when he stopped, it's not recorded, it's not written, but, but we also know, for instance, we know that he made lots of exculpatory statements that were not admitted at trial, because there was a motion by the government to not admit those statements, because it was self-serving, uh, hearsay, so we do know that that is out there. The evidence that he, and again, I just have to say the evidence of knowledge, it's, it's a lack of evidence, is what it is. It is a lack of evidence. It's, he has seen bringing a bag out. He has not seen taking the bags in. We don't know. When you say a bag, you mean he brought a suitcase out, not a bin, correct? Oh, correct, correct. The only thing is a suitcase, not a bin. Right, no, I was not the big giant hundred pound bin or whatever. Correct, correct. There's no evidence at all that he ever was near a bin, saw a bin, touched a bin, except from his wife, the co-defendant. So, so the only, so can you please go through that with us? The bin and the, and the bricks, go through all of that, please. So, Ms. Dominguez testified that somebody brought a bin to her. She didn't really know what was in it, but she thought it might have drugs in it, and she testified about that, but she put her husband, the bin came to her house, and she put her husband there with her. She said that she didn't know how, she said she believed there were drugs, she didn't know exactly, but drugs got from the bins to his suitcase to several bags. She said she didn't do it, she didn't know how it happened, and I'm saying these statements are from her, they are not supported by any other testimony at all, or other corroborating, anybody seeing it, anything. But those suitcases, not the bin, there's bags that get to the house on byway. Mr. Crittenden does say when he is stopped later, he says he took some bags and a is called byway, it's not their home, it's a home of a friend of his. He says that he took them there. He never says, which I have to say, this is one thing I think evidentiary you could look at, is he makes some statements that are against his interest. He says, yes, I took the bags there, yes, I brought the bag out to my wife, but he doesn't say that he knew what was in the bag. I'd like to focus, counsel, I'd like to focus on the last thing you said, when he brings the bag out to his wife from the byway house, is it not undisputed in this case that there were 103 bundles in the attic of the byway house? I believe that's correct. Okay, 13 of those, I think it's undisputed, were full of meth. I believe that's right. 90 of those were full of marijuana. Correct. He selected 10 bags, brought them in a bag, in a suitcase out to his wife. Do you know what the chances are of randomly picking one bundle of meth out of 103 bundles, 90 of which are marijuana? I could not do that math in my head. It's 12.6 percent. Now, if you multiply that by 10, do you know what you get? No. A very high number. Okay. Now, is there evidence in the record that he selected these bundles? No, and that's what I was going to tell you. He brings the bag out to his wife's car. Is she not found, how long after that, with a bag with 10 bundles of meth in it? Oh, I believe that bag that he took out to her had meth in it. What I don't believe... And the police found that. I'm sorry? The police found her with that in the car. Yes, sir. Why couldn't a jury reasonably infer that he brought the 10 bags of meth from the house to the car? Well, he did bring that. I believe he did bring the meth out of the house to his wife. I believe that he did. I think that's a reasonable inference. But the question, what you're saying is, did he pack that bag? Did he select bundles out of the suitcase and put them into a bag? And nobody says that. There's no evidence. I have a picture. We have a picture in the record of suitcases laying open with a bunch of bundles of drugs in them. Correct. I mean, opened by law enforcement officers that opened them and then took pictures. But yes. You're saying no reasonable jury, juror, could infer that he picked, deliberately picked out 10 bags that he knew were full of meth and brought them out to his wife? I don't know that you could make... I mean, you could certainly... It's in the range of it could have happened. I don't think that it is supported by the evidence sufficiently, no. And I have to say this, too, is that we need to remember that on Rule 33, you're not doing what you do under Rule 29, which is assuming all the facts in the light most favorable to the government. That's not what you do when you review a Rule 33 motion, or order, rather. I guess I don't mean to use up more time, but I'll come back to what Judge Smith said earlier. Is there anything unusual or, I forget the word you used, exceptional about this case beyond disagreements over inferences from the evidence? The jurors inferred one thing, the judge looked at it and said, hmm, I don't think they got it right. Is there anything unusual, exceptional about this case? Because I take it as a working presumption that a Rule 33 grant has to be an exceptional thing. Not something the judge can just do whenever he or she disagrees with the evidentiary inferences. Well, so I would say, and I think we all know this, I mean, Judge Briones has presided in one of the busiest courts in the country for over 25 years. It's exceptional for him to do this. No, no, no. No, and I understand. What is exceptional about this case? I know it's exceptional that he did this. That's why we're sitting here on bonk. Correct, and if he thought the evidence was that thin, if he thought there was a miscarriage of justice, because the evidence was that poor, and I just have to say, when you're sitting on the bench watching someone testify, you do pick up things, and there's several cases that say this, you pick up things about credibility, you pick up things about how the jurors are reacting to people. You maybe pick up things about the dynamics of a courtroom that you can't see on a piece of paper. And that's why we defer to the trial court, and I have to say that if a trial judge says, I carefully weighed the evidence, and remember, it wasn't, he did raise concerns about the evidence during the trial. I think there were three instances during the trial when he said, I'll consider a Rule 29. He was, and that's before he had a pre-sentence report. We don't know that he knew that it was going to be a 20-year minimum mandatory at that point, but he was concerned about the evidence during the trial. And if he then, after trial, he rules, but he waits until he gets the transcript. He waits four months or something, four or five months, until he gets a transcript, and where a judge says, I have carefully considered this, and I think this is the exceptional case, where it is weighed against the great, the verdict is against the great preponderance of the evidence. I think that is exceptional. If Critton didn't testify, I should know the answer. He did not. How long was the jury out? I don't know that. I'm sorry. Are you defending the district court's distinct belief, knowledge distinction legally? Yes. You are? Yes. You have authority that suggests if a defendant says to the police, I believe there are drugs in there, that's not sufficient for knowledge? I don't have a case where that's exact. No, I do not have a case where that's exact. That is what the district court, that was the crux of the ruling, correct? Yes. That a belief unsupported by other facts. Somehow not knowledge. Yes. But I also have to say that there's something about when you were asked that after you know there are drugs, the example I gave about if you're the Uber driver, and the police officer says there's cocaine, did you know that? And say, well, I believe it. There's really dynamics in that. I cannot even imagine an Uber driver that thought they just picked up some steaks at a restaurant is going to go, oh, I guess it's cocaine. I mean, wouldn't they just be in shock? And so here, I mean, we don't just have the issue of the bag and all of that. We also have why it was removed from the house and sent to the friend's house was because of fear for the kids that there were drugs in these bags. And that's something Crittenden thought too, right? I think he definitely, I think he was concerned about it. He thought there's something illegal, something bad in there. I agree with that. But not just something bad like shoplifting. Stolen property. But something bad, i.e. illegal drugs. Isn't that something he said? I think that he thought that was a possibility is what I think. And I think that that's what Judge Brione said. That's just not enough. Let me ask you on interests of justice. So there are a number of countries where there are no jury trials, and that's their justice. But the core of the United States is the jury trial. So when we look at interests of justice, and we're trying to construe that phrase, don't we have to look at that core of the United States that believes in jury trials? We do. And that is one of the reasons I thought the history of it was so interesting to know that the Federal Judiciary Act adopted this common law standard that says there will be those and there may be things. I know in the amicus brief, one of the categories is when there may be prejudice from a jury, that a judge does occasionally have to step up and say, I don't think that was right. And there's not a rash. I know the government kind of sounded the alarm, like what verdict is safe? I don't think that's a concern. And I want to mention that Justice O'Connor says in Tibbs, I think it's in footnote 18 of Tibbs, Justice O'Connor addresses that very point, which I actually meant to get back to your question, Judge Costa, is would there be a revolving door of cases if you just grant a new trial and grant a new trial? And Justice O'Connor says in footnote 18, no. That could happen once, but it's not going to happen again. You're not going to apply the same standards. If a jury convicts a second time, then the judge is not going to apply the same standard. But this is a common issue in civil cases, is it not? It is, I believe, more common in civil cases. It's so different than the civil cases that have applied this rule for hundreds of years. Correct. I agree with you, actually, Judge. I don't think it is terribly different than a civil case that's been applying it. And I also think that one of the reasons there's not as much case law as you might expect, and I'm sure you all know this, that the granting of a new trial was not appealable until 1982, I believe, or 1984 when Section 3731 was amended. And prior to that, it was considered an interlocutory, that is, non-appealable order. So for the first 200 years of our court system, the granting of new trials is not appealable. And I think that leads to why we don't have a lot of guidance on this topic of what is the standard and what is appropriate in these kinds of cases, because we don't have the first 200 years of guidance on that. And I think the court is required. I believe the government wants to read more into the rule than what the rule says. And I see my time is up if I don't have any other questions. Thank you. Just to follow up on a couple of points. One thing I did want to mention is the new trial being a protection of the jury, right? And surely that can't be the case. The first jury wouldn't think so. And there is something, I don't want to use the word sacred, but there's something special about the first verdict. And allowing a second jury to come in doesn't do it. And the second jury is not going to hear the same case. Dominguez will not be there to testify. The government can't honestly put her on the stand after all of the inconsistent statements. She's, her credibility issues. The two of the agents in this case have gone on to other assignments. They're on opposite ends of the coast. The informant that we called to testify, he already had his charges dismissed because of his participation in this case and other cases. So the government is suffering some harm. The second jury is not hearing the same case. It's been five years. Any defense counsel is going to heavily cross-examine those agents who had very good memories at the time of the trial about their memories five years later. So to say that, you know, the government, in a very routine drug case, in all honesty, where there's pretty strong evidence of guilt, this is truly not an exceptional case that warranted the court's exercise of its— So what would have had to be different in this case for you all to have not appealed the Rule 33? That's a difficult question based on the facts of this record. I will note that the government did not appeal the conspiracy charge, even though we disagree with it. So the government is always very circumspect about its appeals at these new trials. We don't appeal all of them, and for various reasons, but— I'm trying to understand. I mean, we do have a Rule 33, so there is something that allows district courts to do this. Yes. And I'm trying to understand what you think that something is. We've heard what they think it is, and what do you think it is? The government thinks that the standard that is in place is perfectly fine, that the evidence must preponderate heavily against the verdict such that a miscarriage of justice occurs. It works—it gives discretion to the district court to truly view when some injustice is occurring, evidence of guilt-related or some sort of trial problem, just like Hoffman discussed, that there's some sort of problem that no one else can see that the court could. But the problem in this case is the court didn't have any special vantage point. It was sitting in the exact same place as the jury, interpreting the exact same evidence, just with some personal— I think the judge just felt that this husband was sort of pulled into this mess because his wife did it, and he knew the mess he was in, and he should have called the cops, and he didn't, but that that's what upset him, that—what upset the judge, that just was kind of like being pulled in there because his wife was a mess? That's what the court's comments were at the first sentencing. That's what the closing argument was to the jury, and the jury wasn't affected by that argument. I mean, that identical argument— You don't think that supports the interests of justice, that feeling that the district or that concern that the district judge had? If a district— That's what it was. If a district court can just nullify a jury's verdict based on its own subjective view of standard, I mean, that's a very dangerous proposition. That means there's no rules. There's no Article III right for a jury to try cases, that that jury verdict is not special. I just can't— How could we review it if there was no standard? I mean, we have to review it for abuse of discretion. How could we say he abused his discretion if it's just, well, his feeling was this? That's the exact sentiment in this court's decision in Wall, that it has to be according to a standard, and we have to see if the record supports that standard. Following up on the ineffective assistance of counsel argument, I did want to briefly state, and there is case— It's discussed in a parenthetical in Bay Tank, that even if the court— I mean, you have to evaluate the reasons that the court gets for granting the new trial, but even if it did do it based on ineffective assistance of counsel, it would have had to also do the Strickland prejudice prong. It would have had to properly apply the standard. Counsel, as regards Crittenden, I guess the evidence is that he says he moved the bags because he suspected that they contained the marijuana. There is some evidence of that. He never said, told officers why he moved them. That all came from the testimony of Dominguez. He did say that he thought the bags contained marijuana. He also told them there were more bags in the attic. He knew he was going to get in trouble for telling the officers that. And there's also the statement— Yes, yes. And in your view, that's sufficient to establish possession with intent to distribute methamphetamine. That is our position that it establishes his knowledge or awareness that he was dealing with a controlled substance, which is the only— He didn't have to know which one it was. He didn't have to know which one it was. Yes, yes. And the government thought, based on the language of the court's order, that that's what the court was saying, that after McFadden, the government had to prove that the defendant knew the type and quantity. And so we were operating under the assumption the court made a legal error. And even when we filed a motion for reconsideration on that basis, the court just said, hey, I've said my reasons. So it was difficult to decipher what was exactly happening at that point. I did want to address Tibbs really quickly because I don't think Tibbs is setting forth a standard— I see my time has expired. Yes, I would just ask that you vacate the new trial order. That will conclude the arguments today. Judge Jones was not present for the arguments, but we have recorded them. And she will participate in the decision of this case. The case is under submission. Thank you.